# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

JANE DOE, a minor, by and through
her next friend EVA HUGHES, her mother
and natural guardian, MARY DOE, a minor,
by and through her next friend EVA HUGHES,
her mother and natural guardian,

        Plaintiffs,

vs.                                                       No.  CIV-09-104 WJ/WPL

ISAAC MARTINEZ, a married man, CRUZ
DELIA MARTINEZ, an unmarried woman;
ISAAC MARTINEZ and CRUZ DELIA
MARTINEZ, jointly for the former Community
Estate comprised of Isaac Martinez and Cruz Delia
Martinez, JOHN MOE and JANE MOE, husband
and wife; JOHN ROES I-V, inclusive; JANE ROES
I-V, inclusive; ABC Corporations, Inclusive; XYZ
Partnerships, inclusive,

        Defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT ISAAC MARTINEZ'S MOTION TO VACATE ORDER AND FOR RECUSAL OF THE UNDERSIGNED JUDGE

THIS MATTER comes before the Court on the Motion to Vacate the Court's April 3, 2009 Order and for Recusal of the Undersigned Judge (Doc. 28) filed by Defendant Isaac Martinez ("Defendant").  Having considered Defendant's Motion and Plaintiff's Response (Doc. 30), and having considered the applicable law, I find that Defendant's Motion is not well taken and shall be denied.

## BACKGROUND

Defendant through his attorney, Dennis Montoya ("Montoya"), seeks to have this Court

vacate its Order Remanding Case and Awarding Attorney's fees, Expenses and Costs for

Improper Removal (Doc. 24) on the basis that said Order was entered in violation of Defendant's

due process rights and that 28 U.S.C. § 455(a) and (b) requires the undersigned to recuse himself

from presiding over this case.

## DISCUSSION

**I.      Defendant's Claim of Denial of Due Process**

Due process in the context of the argument advanced by Defendant means notice and an

opportunity to be heard.  Mr. Montoya argues that because he did not receive certain pleadings

electronically filed in the case, Defendant was denied due process.

The above-captioned case was initiated by Defendant when Mr. Montoya filed the Notice

of Removal (Doc. 1) in an attempt by Mr. Montoya on behalf of the Defendant to remove a case

filed in Arizona State Court to the United States District Court for the District of New Mexico.

Mr. Montoya does not dispute that he received Arizona Attorney Leonard Mark's letter dated

February 11, 2009 (Doc. 16, Ex. 1) advising Mr. Montoya that the removal of the Arizona State

Court case to Federal District Court in New Mexico was improper.  Mr. Montoya acknowledges

that he was served with the Motion to Remand (Doc. 12) which is obvious from the record

because Mr. Montoya filed a Response opposing remand (Doc. 19).  What is clear and

undisputed from the record in this case is that Defendant through Mr. Montoya was served with

a copy of the Motion to Remand wherein the Plaintiffs not only provided notice to Defendant

that they were seeking remand, but also provided notice to Defendant that they were seeking

attorney's fees and costs for improper removal.  See Doc. 12.   Therefore, Defendant was

afforded due process in that he had notice of the request for remand and had the opportunity to

be heard by having his attorney, Mr. Montoya, file a Response in opposition to remand.

2

Additionally, Defendant's removal of the Arizona State Court case to the United States District Court for the District of New Mexico was jurisdictionally defective because Mr. Montoya's Notice of Removal was in clear violation of the removal statute, 28 U.S.C. § § 1441 and 1446.[1]  A fundamental principle of federal jurisdiction is the concept that federal courts are courts of limited jurisdiction and that defects in subject matter jurisdiction cannot be waived or cured.  When a federal district court lacks subject matter jurisdiction in a case that has been removed to federal court based on diversity, the case must be dismissed or remanded back to state court regardless of how much notice or opportunity for hearing is afforded the parties.  If this case had been assigned to me at the time Mr. Montoya filed the Notice of Removal, and if I had known about the jurisdictional deficiencies in the removal before Plaintiffs filed their Motion for Remand, I would have *sua sponte* remanded this case back to Arizona State Court without any notice or hearing for lack of subject matter jurisdiction.

Mr. Montoya also advances the argument that Defendant was denied due process because Mr. Montoya was not served with the two orders denying motions for pro hac vice admission of Arizona counsel (Docs. 9 and 18).  Contrary to what Mr. Montoya indicates in his motion, these two orders were entered by U. S. Magistrate Judge William P. Lynch, not the undersigned.  The fact that Mr. Montoya did not receive the two orders entered by Judge Lynch denying Arizona counsels' motions for pro hac vice is of no consequence or relevance to the due process issue raised by Mr. Montoya although I will note that had Judge Lynch granted Arizona counsels' motions for pro hac vice, then Mr. Montoya would not be on the hook for the attorney's fees

---

[1] Other grounds exist for remand such as the failure of the other defendants to consent to removal; however, there was no need to consider these other grounds in view of the clear violation of 28 U.S.C. § § 1441 and 1446.

Plaintiffs incurred in having to hire New Mexico counsel to file the Motion for Remand because it would have been filed by Arizona counsel.

Mr. Montoya next argues that he did not receive the Minute Order from the Clerk of Court notifying the parties that the above-captioned case was assigned to the undersigned (Doc. 22). He also complains that the Order Remanding Case and Awarding Attorney Fees for Improper Removal (Doc. 24) was not served on him. Assuming the truth of Mr. Montoya's assertions, my reaction is SO WHAT! While Mr. Montoya and the Defendant may not have initially known that the case was assigned to me on March 31, 2009, they certainly learned that I was the presiding judge when I entered the Order remanding the case back to Arizona State Court. If Defendant is trying to argue that he would have filed the Motion to Recuse sooner had he known I was the presiding judge, then in all likelihood I would have entered the Order denying the Motion to Recuse at an earlier date. As for Mr. Montoya's assertion that he was not served with the Order Remanding Case and Awarding Attorney Fees, Mr. Montoya certainly received notice of this Order, otherwise he would not have filed the instant motion.

The bottom line is that Defendant and Mr. Montoya received all the process to which they were due in this case. There are simply no grounds for vacating the Order remanding this case back to Arizona State Court when removal to this Court was improper and in clear contravention of the language in the removal statute, 28 U.S.C. § § 1441 and 1446.

## II.    Judicial Recusal

A.    <u>Recusal Statute</u>

28 U.S.C. § 455(a) requires the recusal of a federal judge "in any proceeding in which his impartiality might reasonably be questioned." The current version of Section 455 was adopted in 1974 to clarify and broaden the grounds for judicial disqualification. <u>Liljeberg v. Health</u>

4

Services Acquisition Corp., 486 U.S. 847, 858 n.7 (1988). "The general language of subsection (a) was designed to promote public confidence in the integrity of the judicial process by replacing the subjective 'in his opinion' standard [of the prior version of the statute] with an objective test. Id. (citing S. Rep. No. 93-419, at 5; H. R. Rep. No. 93-1453, at 5).[2]  Subsection (b) of the statute contains a list of specific situations in which the judge is required to recuse, including "bias or prejudice" and "interest or relationship" grounds.[3]

The new subsection (b) of §455  incorporated the "bias and prejudice" basis for recusal from an older version of the Judicial Code, 28 U.S.C. § 144, and "spelled out in detail the 'interest' and ' relationship' grounds of recusal that had previously been covered by [the old version of] § 455." Liteky v. United States, 510 U.S. 540, 548 (1994):

> Subsection (a), the provision at issue here, was an entirely new "catchall" recusal provision, covering both "interest or relationship" and "bias or prejudice" grounds,  . . . but requiring them *all* to be evaluated on an *objective* basis, so that what matters is not the reality of bias or prejudice but its appearance.

Id.; U.S. v. Cooley, 1 F.3d 985, 993 (10th Cir. 1993) (standard under § 455(a) is purely

---

[2] Prior to the 1974 amendments, § 455 simply provided: "Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein." 28 U.S.C. § 455 (1970 ed.).

[3] The "bias or prejudice" grounds for recusal, as incorporated from 28 U.S.C. § 144, are articulated as "where [the judge] has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). The "interest or relationship" grounds for recusal are "spelled out in detail" at 28 U.S.C. § 455(b)(2)-(5). Liteky v. United States, 510 U.S. 540, 548 (1994). These grounds include where the judge has previously been a lawyer or material witness in the matter, or expressed an opinion about its merits; where the judge or a person within the third degree of relationship has an interest in the subject matter in controversy; and where the judge or person with the third degree of relationship is likely to be a material witness in the proceeding. 28 U.S.C. § 455(b)(2)-(5).

objective).  Thus, the § 455(a) inquiry is whether a reasonable person, having knowledge of all

the circumstances, would believe that one or more of the "bias or prejudice" or "interest or

relationship" grounds for recusal is applicable.

Recusal is required whenever "impartiality might reasonably be questioned." U.S. v.

Mendoza, 468 F.3d 1256, 1262 (10th Cir. 2006).  If the question of whether § 455(a) requires

disqualification is a close one, the balance tips in favor of recusal.  Nichols v. Alley, 71 F.3d

347, 352 (10th Cir. 1995).  The Nichols Court further elaborated on §455(a):

> Having stated what §455(a) is intended to accomplish and the standards for
> analyzing a recusal motion under that statute, we now note the cautions that must
> accompany our analysis.  The statute "must not be so broadly construed that it
> becomes, in effect, presumptive, so that recusal is mandated upon the merest
> unsubstantiated suggestion of personal bias or prejudice."  Neither is the statute
> intended to bestow veto power over judges or to be used as a judge shopping
> device.  Further, we are mindful that a judge has as strong a duty to sit when there
> is no legitimate reason to recuse as he does to recuse when the law and facts
> require.

Nichols, 71 F.3d at  351 (other citations omitted).

Federal law is clear that a motion for recusal must be decided by the judge whose recusal

is requested.  See U. S. v. Balistrieri, 779 F.2d 1191, 1202-03 (7th Cir.1985) ("§ 455 clearly

contemplates that decisions with respect to disqualification should be made by the judge sitting

in the case, and not by another judge"); U.S. v. Champlin, 388 F.Supp.2d 1177 (D.Hawaii, 2005)

(§ 455 is addressed to the judge whose recusal is in question and demands that the judge decide

for him or herself whether to recuse); Davis v. Board of School Commissioners, 517 F.2d 1044,

1051 (5th Cir. 1975), cert. denied , 425 U.S. 944 (1976) (§ 455 is directed to the judge, rather

than the parties, and is self-enforcing on the part of the judge); see, e.g., Nicodemus v. Chrysler

Corp., 596 F.2d 152, 157 & n.10 (6th Cir. 1979) (§ 455 includes no provision for referral of the

question of recusal to another judge; if the judge sitting on a case is aware of grounds for recusal

under § 455, that judge has a duty to recuse himself or herself).  Accordingly, I must decide whether a reasonable person might reasonably question my ability to be impartial in discharging my duties as the presiding judge in this case.

Defendant's grounds for recusal are based on allegations of bias regarding the undersigned's decision not to accept a plea in a criminal case in which Mr. Montoya represented the defendant in that case; the decision to not reappoint Mr. Montoya to the CJA Complex Felony Panel; and the undersigned's order vacating a jury verdict which found in favor of Mr. Montoya's client who was a plaintiff in a civil rights case.

Given the applicable legal standard for recusal, I must now address Mr. Montoya's allegations that I have a " . . . history of harsh interaction with [Mr. Montoya]" such that I must recuse myself from this case.

B.    U.S. v. Summers

In support of Defendant's Motion for Recusal, Mr. Montoya cites the criminal case of U.S. v. Summers, 414 F.3d 1287 (10th Cir. 2005), USDCNM No. CR-03-569 where Mr. Montoya represented Gene Summers and I was the presiding judge until the case was transferred to U.S. District Judge James O. Browning shortly before the trial.  As I understand Mr. Montoya's argument, the undersigned harbors animus toward Mr. Montoya because the Tenth Circuit reversed the conviction of a criminal defendant whose plea agreement I rejected and who was thus forced to proceed to trial in front of Judge Browning to be convicted by a jury.  These allegations regarding the Summers case are so absurd that I am having difficulty knowing how to respond so I will do my best to analyze this matter, as I am required to do, in order to assess Mr. Montoya's allegations of judicial bias.

Since Mr. Montoya's allegations of bias and retaliation stem from my conduct

surrounding the plea agreement in the <u>Summers</u> case, a review of the transcript of Mr. Summers'
plea hearing is in order.  Accordingly, attached is a transcript of the plea hearing before the
undersigned judge which took place on Monday, November 24, 2003 (hereinafter referred to as
"Tr.").  Mr. Montoya was present at that plea hearing with his client, Mr. Summers, who was
one of four defendants charged with robbing a branch office of the Bank of America in
Albuquerque on February 27, 2003.  Mr. Montoya negotiated a plea agreement with the
Government that provided for Mr. Summers pleading guilty to Count I of the Superseding
Indictment, that is, the offense of bank robbery under a theory of aiding and abetting.   Tr. at 19.

Under the Government's theory of the case, two other defendants (Omar Mohammed and
Curtis Dwayne Frazier) were the individuals who entered and robbed the bank.  According to the
Government, they exited the bank and jumped into a stolen car that was driven by Mr. Summers.
Tr. At 29-31. The three individuals in the getaway car ended up at an apartment complex and an
hour or so later, these three individuals exited the apartment with a fourth individual.  All four
men then got into a red sports utility vehicle that had been rented by the fourth defendant,
Marvin Thomas.  Shortly thereafter, the police initiated a traffic stop and in plain sight in the
vehicle was a significant quantity of currency which was subsequently identified as having come
from the Bank of America branch bank that was robbed earlier in the day.  <u>Id.</u>  This is a
summary of the Government's theory of the case and the factual basis that the Government
insisted justified Mr. Summers' pleading guilty to the bank robbery count.

The transcript indicates the plea hearing was uneventful up until the point where the
prosecuting attorney stated on the record the factual basis which supports the plea.  <u>See</u> Tr. at 18-
32.  What was somewhat unique about the Summers plea hearing was Mr. Summers' insistence
that he was not guilty of the offense of bank robbery as contemplated in the Plea Agreement.  As

the plea hearing transcript reflects, when I asked Mr. Summers if he disputed or disagreed with the factual basis stated on the record by the prosecuting attorney, Mr. Summers specifically denied being the driver of the getaway car.  Tr. at 32.  Mr. Montoya stated on the record that Mr. Summers was willing to acknowledge that he knew some kind of illegal activity had occurred and he agreed that he was with the other three defendants later in the day when the police stopped the red sports utility vehicle. Tr. at 33.  However, Mr. Montoya stated that Mr. Summers had consistently denied being the driver of the getaway car.

Mr. Summers' statements to me under oath at the plea hearing that he was not the driver of the getaway vehicle and that he was not present at the Bank of America branch that was robbed by Co-defendants Mohammed and Frazier, constituted a consistent and adamant denial of a critical part of the factual basis for the Plea Agreement.  Based on Mr. Summers' sworn statements to me at the plea hearing, I determined that I could not accept Mr. Summers' Plea Agreement as Mr. Montoya had negotiated it with the Government.  See Tr. at 33-45.

Mr. Montoya evidently believed that the fact that his client "came into the picture rather late, and later than the government appears to believe, does not preclude his entering into a plea agreement." Tr. at 37: 20-23.   However, the Government advised the Court that Mr. Summers was being charged with aiding and abetting in the actual bank robbery, as opposed to subsequently aiding and abetting the concealment of cash. Tr. at 37:1-9.  There was discussion on the record among Mr. Montoya, AUSA Mary Katherine McCulloch and me regarding whether additional plea negotiations would be in order under some kind of accessory theory or what is generally known as a misprision of a felony offense which would be consistent with what Mr. Summers stated was his limited role in the case.  Tr. at 37-39.  Ultimately, the parties were unable to come to terms on a plea agreement as evidenced by the fact that Mr. Summers and Co-

defendant Thomas proceeded to trial.

While I do not have a copy of the actual Plea Agreement that was the subject of the plea hearing that took place on November 24, 2003, the transcript of Mr. Summers' answers, while under oath, are worth noting.  The Plea Agreement presented on November 24, 2003, did not contain a specific agreed upon sentence, and at the hearing I asked Mr. Summers if he understood that the recommendations in the Plea Agreement regarding sentencing were not binding on me as the sentencing judge.  Tr. at 23:6-11.  The Plea Agreement also contained a provision that Mr. Summers was waiving or giving up his right to appeal the final sentence as long as the sentence was within the applicable sentencing guideline range.  Tr. at 27.

Next, I find it appropriate to address Mr. Montoya's statements regarding how the Summers case came to be tried in front of Judge Browning.  Mr. Montoya's statement that the case was "transferred at the last minute because of Judge Johnson's caseload" (Mot. Vac. at 6, ¶ 10) is not entirely accurate.  Initially, the Court was ready to try the case on the December docket, but continued the case in order to accommodate Mr. Montoya.

> The Court:      . . . Mr. Montoya, would I be correct in assuming that you wouldn't be ready to go to trial next week in this case?
>
> Mr. Montoya:  It would be quite a challenge for me to be ready by December 1, Your Honor.

Tr. at 40.  I obtained a waiver from Mr. Summers of his speedy trial rights on the record at the request of AUSA McCulloch.  By the time the Summers case was ready for trial, I had other criminal cases previously set on my trial docket.  As Mr. Montoya stated at the plea hearing, Mr. Summers had already waived his speedy trial rights on several other occasions. Thus, out of concern for Mr. Summers' speedy trial rights, and as a result of moving the trial from the December 2003 trial setting in order to accommodate Mr. Montoya and the other defense

counsel, I asked Judge Browning to preside over the trial.  Judge Browning graciously agreed.
Mr. Summers and Mr. Thomas proceeded to trial before Judge Browning and the jury convicted
both defendants.  On appeal, the Tenth Circuit set aside Mr. Summers' conviction based on
insufficiency of the evidence but affirmed the conviction for Mr. Thomas.  U.S. v. Summers, 414
F.3d 1287, 1296-1303 (10th Cir. 2005).

Mr. Montoya states in Paragraph 10 of the Motion to Recuse that "[h]ad Judge Johnson
accepted the Plea Agreement, the trial would never have taken place.  It appears to have been
simply beyond the expectations of the United States District Court for the District of New
Mexico that the Tenth Circuit would correctly apply the law and vacate Mr. Summers'
conviction for failure of proof, after he had spent approximately two (2) years of unjust
incarceration." Mot. Vac. at P. 6-7.  Mr. Montoya is to be commended for the notion that the law
should be correctly applied.  What is shocking about Mr. Montoya's statement is his insistence
that I should have accepted his client's guilty plea to the crime of bank robbery, notwithstanding
Mr. Summers' insistence, given under oath and without any reservation, that he was not guilty of
the crime of bank robbery under the Government's theory of the case.  Mr. Montoya actually
argues that his client should have been adjudicated of the crime of bank robbery on a plea
agreement and sentenced to such without any rights to appeal his sentence – the appeal which
reversed his client's conviction.   Had this scenario occurred, Mr. Summers very likely would
still be incarcerated with his only recourse being to file a habeas proceeding asserting ineffective
assistance of counsel.

Mr. Montoya is convinced that I am biased toward him because I "may well have been
embarrassed before [my] colleagues, especially the district judge who, as a favor to Judge
Johnson, agreed to preside over the trial." Mot. Vac. at 6.  Given the reasoning which underlies

Mr. Montoya's claims of bias relating to the <u>Summers</u> case, the only one who should be embarrassed is an attorney who believes it is more desirable for his client to accept a plea agreement which likely would have resulted in a considerable period of incarceration instead of a complete reversal of his client's conviction.

With respect to the <u>Summers</u> case and the actions I took in that case with Mr. Summers and his counsel, Mr. Montoya, I find and conclude that a reasonable person would not question my ability to be impartial in discharging my duties as the presiding judge in the instant case. Moreover, nothing I did or said regarding Defendant Summers and his attorney, Mr. Montoya, would indicate any kind of bias on my part against Mr. Montoya.

C.      <u>Criminal Justice Act ("CJA") Panel</u>

Mr. Montoya next argues that as a result of the <u>Summers</u> case, the active district judges of the United States District Court for the District of New Mexico collectively retaliated by not reappointing Mr. Montoya to the CJA Complex Felony Panel.

The judges of the Federal District Court of New Mexico, like the judges in all the other ninety-three districts in the nation, meet periodically to discuss various administrative matters that are brought to the attention of the judges by the chief judge of the district. I was one of seven judges who signed an Administrative Order for the appointment of lawyers to represent indigent criminal defendants and Mr. Montoya's name was not listed as one of the attorneys on the CJA Complex Felony Panel.

To the extent Mr. Montoya is inviting me to comment publicly on the nature of the discussions that took place in a closed meeting of the active judges in this district, I decline that invitation.  To the extent that Mr. Montoya feels aggrieved because the Chief Judge did not specifically respond to written letters Mr. Montoya claims he sent, that is a matter between Mr.

Montoya and the Chief Judge and does not concern me.

If one carries Mr. Montoya's argument to its logical conclusion, every active federal district judge in the District of New Mexico is biased against Mr. Montoya  because every active judge in the district signed off on the Order appointing CJA attorneys which did not include Mr. Montoya.  I find and conclude that a reasonable person would not question my ability to be impartial in discharging my duties as the presiding judge in this civil case because I was one of seven judges who signed an Administrative Order which did not include Mr. Montoya as a lawyer reappointed to the CJA Complex Felony Panel.

D.      Chavez v. City of Albuquerque

The next case that Mr. Montoya cites as evidence of my bias and prejudice against him is the case of Chavez v. City of Albuquerque, 402 F.3d 1039 (10th Cir. 2005), a case in which I presided over the pre-trial, trial and post-trial phases.  The facts of the case and its procedural history are set forth in detail in the Tenth Circuit's Opinion so there is no need for me to state in this Order what has already been stated in detail in the Circuit's Opinion.  I will note at the outset that the decisions I made as the trial judge in the Chavez case were affirmed by the Tenth Circuit.  I will further note that in my experience as a U. S. District Judge, if the judges of the Tenth Circuit Court of Appeals disagree with any ruling I make or any action I take, they are not shy about letting me know.

In the Chavez case, the jury awarded Mr. Montoya's client damages in the nominal amount of $1.00 on his Section 1983 claims that an officer of the Albuquerque Police Department ("APD") used excessive force against Mr. Montoya's client.  During trial when Mr. Montoya's client was being cross-examined, he admitted that he perjured himself during discovery.  APD moved to set aside the Jury's Verdict and to dismiss the case among other

requests.  I granted the APD officers' Motion for Judgment As a Matter of Law and dismissed

Mr. Montoya's client's excessive force claims based on Mr. Montoya's client's admission that

he perjured himself during his pre-trial deposition.  What I did not do in the <u>Chavez</u> case is grant

the APD's request that Mr. Montoya be personally sanctioned.  Rather,  I specifically found that

Mr. Montoya did not act either intentionally or with reckless disregard concerning his duties of

candor to the Court in presenting his client's testimony:

> While I question how Mr. Montoya would not have known of Plaintiff's
> perjurious deposition testimony and interrogatory answers, I do not find that the
> portions of the trial transcript provided by Defendant support the contention that
> Plaintiff's counsel was guilty of suborning perjury. None of counsel's statements
> at trial implied that he either knew about Chavez' perjury or that he
> acknowledged the perjury as a trial strategy. . . Given the lack of evidence to
> show that Mr. Montoya knew of his client's perjury, I do not find his conduct to
> manifest either intentional or reckless disregard of his duties, as required for the
> imposition of sanctions under § 1927.

<u>Chavez</u>, 00cv307, Doc.  170 at 10.

Mr. Montoya's assertions of bias and animus extend to being forced to "swallow"

$11,114.17 in costs that his indigent incarcerated client could not pay.  Mot. Vac. at 11.  These

assertions simply do not hold up under the findings I made on that issue:

> If Mr. Montoya had a nagging suspicion that Chavez's allegations were a sham,
> he will be sufficiently penalized as a result of the dismissal of Plaintiff's case,
> since he will not be awarded costs and will not be entitled to any attorney fees the
> Court might have been inclined to grant.

Doc. 170 at 10.

I will acknowledge that as a result of my setting aside the $1.00 jury verdict in favor of

Mr. Montoya's client and dismissing the case, my ruling had the effect of precluding Mr.

Montoya from seeking attorney's fees and costs, but any lawyer who represents an indigent

plaintiff always runs the risk of having to eat attorney's fees and litigation expenses in the event

of an adverse outcome at trial.  Mr. Montoya was well aware that his client was incarcerated prior to trial and if Mr. Montoya was concerned about having to eat any attorney's fees and litigation expenses in the event of an adverse outcome at trial, then he should not have undertaken the representation in the first place.

Mr. Montoya makes the statement in paragraph 21 of the Motion to Recuse that several attorneys have told him that they have heard about the <u>Chavez</u> case.   Perhaps attorneys have heard about the <u>Chavez</u> case because the Tenth Circuit decided to publish its opinion in the West Reporter and the case now stands for the proposition that there can be consequences for a party who testifies falsely at a deposition.  In other words, there is still something to be said about taking an oath to tell the truth.

Accordingly, I find and conclude that a reasonable person would not question my ability to be impartial in discharging my duties as the presiding judge in the instant case based on the rulings and decisions I made in the case of <u>Chavez v. City of Albuquerque</u>.

III.    **Other Sanctions**

Mr. Montoya is no stranger to court imposed sanctions.  Accordingly, the Court hereby takes judicial notice of the following civil cases in the U.S. District Court for the District of New Mexico.

A.    <u>Sizemore v. State of New Mexico, et al.</u> Civ. 04-272 JP.

This case was filed by Mr. Montoya on behalf of the plaintiff in a Title VII discrimination case against individuals in the New Mexico State Department of Labor and against Robert Cazwell Investigations, Inc. and individuals associated with Cazwell Investigations.  The case was assigned to Senior U.S. District Judge James A. Parker.  In Judge Parker's Order filed March 31, 2005 (04CV272, Doc. 110), on the Cazwell defendants' Motion

for Attorney's Fees (04CV272, Doc. 95), Judge Parker stated:

> . . . the Court has considered the Motion on its merits and has concluded that the Plaintiff's claims against the RCI [Cazwell] defendants were unreasonable and without foundation even though they were not brought in subjective bad faith. See Christianburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978).  Moreover, the Court concludes that the plaintiff continued to litigate her claims against the RCI defendants in the face of evidence disclosed to plaintiff that showed clearly that the RCI defendants did not treat plaintiff differently from others because she was a female.  See Huges v. Rowe, 449 U.S. 5, 15 (1980).

Judge Parker determined that the RCI defendants' Motion for Attorney's Fees should be granted on its merits; however, Judge Parker also noted that Mr. Montoya's client, Ms. Sizemore, did not file a response in opposition to the Motion for Attorney's Fees and so she was deemed to have consented to the granting of the Motion since no response in opposition was filed.  See D.N.M. LR-Civ. 7-1(b).

Judge Parker also granted the State of New Mexico Defendants' Motion for Summary Judgment noting that no response in opposition was filed on behalf of Ms. Sizemore (04CV272, Doc. 115).  The State Defendants subsequently filed a Motion for Attorney's Fees and Costs (04CV272, Doc. 136) wherein they requested that sanctions against Mr. Montoya be imposed pursuant to 28 U.S.C. § 1927.

Judge Parker ultimately referred the question of whether Ms. Sizemore was able to pay attorney's fees and whether Mr. Montoya should be sanctioned pursuant to 28 U.S.C. § 1927 to U.S. Magistrate Judge Lorenzo Garcia (04CV272, Doc. 162).  Judge Garcia recommended that Mr. Montoya be assessed attorney's fees in the amount of $6,448.50 payable under 28 U.S.C. § 1927 to the State of New Mexico Defendants (04CV272, Doc. 170) and Judge Parker, on June 18, 2007, entered an Order  Adopting Judge Garcia's Findings, Analysis and Recommended Disposition in Awarding Attorney's Fees in favor of the State of New Mexico Defendants

against Mr. Montoya in the amount of $6,448.50 (04CV272, Doc. 182).  Judge Parker held:

> Even though it has not been shown that Mr. Montoya acted with subjective bad
> faith, his conduct in this case meets the objective standard for bad faith, in that he
> brought federal discrimination claims that had no basis, engaged in dilatory
> tactics, and continued to assert meritless claims long after it became clear that the
> claims had no basis.  Furthermore, after being given the opportunity to show
> cause why sanctions should not be imposed against him, Mr. Montoya failed to
> appear at the hearing scheduled by Judge Garcia.  "Section 1927 targets conduct
> that multiplies the proceedings, which, when viewed objectively, manifests either
> intentional or reckless disregard of attorney's duties to the court."  Steinert, 440
> F.3d at 1226 (citation and internal quotation marks omitted); Miera v. Dairyland
> Ins. Co., 143 F.3d 1337, 1342 (10th Cir. 1998) (conduct that, viewed objectively,
> manifests either intentional or reckless disregard of attorney's duties to court,
> warrants § 1927 sanctions).  Viewed objectively, Mr. Montoya's conduct,
> especially after April 18, 2005, manifested "intentional or reckless disregard" of
> his duties to the Court.  *See* Braley v. Campbell, 832 F.2d 1404, 1512 (10th Cir.
> 1987).  Thus, Mr. Montoya's conduct meets the stands for an award of sanctions
> against him under § 1927.

Mr. Montoya's conduct in the instant case in filing a Notice of Removal that violated the

removal statute and was jurisdictionally deficient on its face, his failure to voluntarily dismiss

the removed case when requested by Arizona counsel to do so and Mr. Montoya's filing an

opposition to the Motion for Remand asserting legally untenable positions is remarkably similar

to the conduct Judge Parker described when he sanctioned Mr. Montoya under 28 U.S.C. § 1927

in the Sizemore case.

B.      McGuinness v. University of New Mexico School of Medicine, 170 F. 3d 974

 (10th Cir. 1998).

In this case, Mr. Montoya represented the plaintiff who filed suit claiming violation of

the American with Disabilities Act.  The Circuit's Opinion contains a detailed statement of the

facts which will not be repeated by me, but what is of significance is the Circuit's affirmance of

the sanction imposed by Magistrate Judge Lorenzo Garcia against the plaintiff after Judge Garcia

decided that Mr. Montoya improperly obtained an affidavit from an individual in violation of a

protective order barring Mr. Montoya from ex parte conduct with the particular individual.  <u>See</u> <u>id.</u> at 980.

C.      <u>Holguin, et al. v. Burge, et al.</u>, Civ. 05-0628 MCA, U.S. District Court for the District of New Mexico, aff'd.  <u>Holguin, v. Burge</u>, 240 Fed. Appx. 250 (C.A. 10, 2007).

        This was a civil rights complaint filed by Mr. Montoya on behalf of the plaintiffs against Detective Burge of the Albuquerque Police Department.  The case was assigned to U.S. District Judge Christina Armijo and Judge Armijo entered an Order dismissing plaintiff's complaint on the basis that the conduct of the plaintiffs and their counsel, Mr. Montoya, warranted dismissal with prejudice because Mr. Montoya demonstrated a practice of obtaining dismissals of earlier cases without prejudice in order to circumvent court deadlines.  In the words of Judge Armijo:

> Plaintiffs' practice of filing and voluntarily dismissing multiple actions at strategic intervals also causes substantial interference with the judicial process because it makes a mockery of the pre-trial deadlines established in the Initial Pre-Trial Report and other Scheduling Orders pursuant to Fed. R. Civ. P. 16 and T. N. M. Lr. Civ. 16.1."  To the extent that plaintiffs failed to meet any of these deadlines established by the Court in the first action, they simply allow that action to be dismissed without prejudice on procedural grounds and re-file a second action with new deadlines to give them additional time to respond to the issues or requests that were raised by the opposing party in the first action.  In effect, this practice allows plaintiffs to unilaterally control the pace of the litigation with little or no input from, or notice to, the Court or opposing counsel.  The result is to significantly hinder "the Court's management of its docket and its efforts to avoid unnecessary burdens on the Court and the opposing party.  <u>Jones v. Thompson</u>, 996 F.2d 261, 265 (10th Cir. 1993)."  05CV628, Doc. 35 at P. 22.

        Judge Armijo went on to comment that to the extent plaintiffs had a meritorious claim that was not allowed to proceed as a result of the misconduct of their attorney (Mr. Montoya), the proper remedy for plaintiffs would be a legal malpractice claim against Mr. Montoya rather than continued litigation against the defendants.  <u>See</u> 05CV628, Doc. 35 at P. 23.

        The conduct of Mr. Montoya in the case at bar, like his conduct in the three above

18

referenced cases where Mr. Montoya was personally sanctioned or his clients were sanctioned as a result of actions taken by Mr. Montoya, fell well below the professional standards expected of attorneys who practice in federal court.  Having failed to learn from the experiences of being sanctioned by Judge Parker, Judge Armijo and Judge Garcia, Mr. Montoya can now add me to the list of judges who have sanctioned him.  However, just because a judge sanctions a lawyer under Fed. R. Civ. P. 11 or 28 U.S.C. § 1927 does not mean the judge must recuse himself in cases involving that particular lawyer.  Merely upholding the standards of the legal profession is not a basis for judicial recusal.

## CONCLUSION

As the Tenth Circuit stated in the <u>Nichols</u> case, ". . . we are mindful that a judge has a strong duty to sit where there is no legitimate reason to recuse as he does to recuse when the law and facts require." 71 F.3d at 351.  Having determined that the law and facts do not require recusal, I am mindful of my duty to remain as the presiding judge where there is no legitimate reason to recuse.  Accordingly, the Motion to Vacate Order and for Recusal of the undersigned Judge is **DENIED**.

**SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE

19